## A90A1396. THE STATE v. BLALOCK.

(397 SE2d 491)

BEASLEY, Judge.

Blalock was arrested for driving under the influence of alcohol and other offenses. The court granted his motion in limine to suppress results of the state-administered intoximeter test, based on a finding that Blalock was not permitted an independent blood test as provided in OCGA § 40-6-392 (a) (3).

The officer testified at the hearing to the following. After Blalock's request for an additional blood test, the officer informed Blalock that the closest hospital was DeKalb Medical Center and that the officer could take Blalock there or to another one that Blalock designated. Blalock did not indicate that he wished to be taken to another facility and agreed to go to DeKalb. Blalock did not question the officer about DeKalb's procedures.

The officer transported Blalock to DeKalb where Blalock paid for the test and executed the required paperwork. He signed a consent form which stated that Blalock requested DeKalb to take a blood sample from him for the purpose of determining the alcohol and/or drug content in accordance with OCGA § 40-6-392; he fully understood that he was not required to take the blood test against his wishes; he was voluntarily submitting to the test; he authorized the hospital to give the specimen to the police to be transported to the State Crime Laboratory for determination of alcohol and/or drug content; he would not hold DeKalb or its employees and agents liable for disclosure of the test results; he had read and fully understood the consent he was executing; and he was aware that the test results might subsequently be used as legal evidence.

The laboratory technician drew three vials of blood. The officer explained what would happen to the samples. The first two were to be labeled and sealed for the officer to take to the State Crime Laboratory and the third was to be labeled and sealed to be tested by an independent laboratory utilized by the hospital. The test results from the independent laboratory would then go directly to Blalock.

Blalock then, for the first time, requested that he be given the third blood vial so it could be tested by Northside Hospital's laboratory. The officer's understanding of DeKalb's policy was that once the blood was drawn it would not be given back to the patient to take with him. The laboratory technician told Blalock that DeKalb's policy was to send the blood work to the lab it used, but a supervisor testified that this was erroneous; an individual requesting a blood test could take the blood with him.

The officer believed that once he brought an arrestee to have blood drawn, he had no further input into the test process. He told Blalock that he believed they had to comply with DeKalb's policy.

Blalock made no effort to contact Northside and inquire whether or not the blood could be transported to its laboratory for testing nor did he ask to speak with other DeKalb personnel to find out if he could retain the blood sample for testing at another facility. Eventually Blalock agreed to allow DeKalb to retain and send his blood for testing.

Even though it was undisputed that Blalock had been given the implied consent warnings and thus was informed he had a choice of testing facility and personnel, Blalock testified that at the time of his request for an independent blood test he did not know he had a choice but believed he would have to be taken to DeKalb. The officer testified that if Blalock had requested to be taken to Northside Hospital, the officer would have taken him there.

" '[T]here is coupled with the right granted to the accused [to an independent test] a corresponding duty on the part of law enforcement officers not to deny him that right.' *Puett v. State*, 147 Ga. App. 300 (248 SE2d 560) (1978)." *Lovell v. State*, 178 Ga. App. 366, 369 (2) (343 SE2d 414) (1986).

"While it is not the officer's duty to insure the performance of an independent test, he cannot prevent a defendant from exercising his right to such a test. *Grizzle v. State*, 153 Ga. App. 364 (2) (265 SE2d 324) (1980). The statute also states that 'the justifiable failure or inability to obtain an additional test shall not preclude the admission of evidence relating to the test or tests taken at the direction of a law enforcement officer.' It is incumbent on the trial court to determine whether the failure or inability to obtain the additional test is justified. In making that determination, the trial court must decide if, under the totality of the circumstances, the officer made a reasonable effort to accommodate the accused who seeks an independent test." *State v. Buffington*, 189 Ga. App. 800, 801 (377 SE2d 548) (1989).

There was no evidence that the officer purposefully impeded Blalock's belated request to remove his blood to another testing facility. The officer transported him for the requested test to an agreed upon facility. It was only after blood was drawn Blalock expressed the desire to have the sample tested at Northside even though he had consented to the test at DeKalb. The consent clearly contemplated the testing as well as the drawing of the blood.

The officer did not refuse, as a matter of discretion, Blalock's request to take the blood. The officer believed he had no discretion in the matter but rather echoed what had been expressed, albeit erroneously, as DeKalb's policy. There was no evidence of police action or inaction which prevented accommodating Blalock. Compare *State v. Hughes*, 181 Ga. App. 464 (352 SE2d 643) (1987) and *Akin v. State*, 193 Ga. App. 194 (387 SE2d 351) (1989).

At no time did Blalock request the officer to transport him to

Northside for another test. Even if DeKalb had given Blalock the vial of blood, Blalock made no attempt at the time it was drawn to arrange for its testing at Northside or to determine that Northside would accept it. See *Lovell*, supra at 369 (2) and *State v. Laycock*, 151 Ga. App. 145 (259 SE2d 150) (1979).

The evidence compels the conclusions that the officer did not fail to make a reasonable effort to fulfill Blalock's right and that the failure to obtain the split-procedure testing at different facilities as sought by defendant was justifiable. It was error to suppress the evidence.

*Judgment reversed. Deen, P. J., and Pope, J., concur.*

DECIDED SEPTEMBER 25, 1990.

*Ralph T. Bowden, Jr., Solicitor, Judith C. Emken, Cliff Howard, Assistant Solicitors*, for appellant.
*Ralph J. Hunstein*, for appellee.