A92A0751. THE STATE v. GRIFFIN.

(419 SE2d 528)

BIRDSONG, Presiding Judge.

The State directly appeals, pursuant to OCGA § 5-7-1 (4), the ruling of the trial court granting appellee Kerry Jackson Griffin's motion to suppress a breath test result on the grounds appellee was denied the right to an independent test in violation of OCGA § 40-6-392 (a) (3). *State v. Strickman,* 253 Ga. 287 (319 SE2d 864).

Appellee was stopped by the police. After submitting to a breath test, he was advised of his right to have an independent test and was given the choice of two hospitals, Henry General Hospital or Southern Regional Hospital. The evidence is in conflict whether appellee was advised that Henry General Hospital would only extract and not analyze the blood, but that Southern Regional, which charged more, would both extract and analyze blood. Appellee requested to use and was transported to Henry General where his blood was drawn and the sample handed to him. Appellee was returned to jail; his blood sample was taken from him, but returned the following day when he was released. Appellee makes an admission in judicio in his appellate brief of the fact that the blood sample was subsequently subjected to "a separate, analysis." *Bannister v. State,* 202 Ga. App. 762 (415 SE2d 912) and cases cited therein; *Dover Realty v. Butts County &c.,* 202 Ga. App. 787, 788 (3) (415 SE2d 666); *Department of Transp. v. Franco's Pizza &c.,* 194 Ga. App. 437, 438 (390 SE2d 655); *Fuller v. Fuller,* 109 Ga. App. 386, 393-394 (3) (136 SE2d 461); see generally Green, Ga. Law of Evid., Admissions, §§ 233 and 238; see, e.g., *Kentucky &c. Co. v. Continental Cas. Co.,* 335 S2d 649 (SC Ala.); *Coco v. State,* 62 S2d 892, 896 (SC Fla.); *Town of Boca Raton v. Raulerson,* 146 S. 576, 577 (SC Fla.); *State v. Morgan,* 319 SE2d 335 (7) (SC S.C.). Appellee makes no assertion and the record does not establish

that, after being given his blood sample, he requested and was refused by the police to be taken to Southern Regional or to any other facility where his extracted blood sample could be promptly tested.

The trial court by granting the suppression motion tacitly ruled that the procedure employed by the police in this case did not meet the requirements of OCGA § 40-6-392 (a) (3). *Held:*

1. Appellee argues police conduct precluded him from preserving chain of custody of his blood sample thereby preventing him from subsequently obtaining a test result that would be admissible in evidence. This police conduct he argues in effect deprived him of his right to an additional test.

A chemical analysis subsequently was performed of blood contained in the sample extracted from appellee. Appellee does not assert that a testing of his blood sample was not accurately performed due to improper handling or tampering by the police, or by any failure to have the sample analyzed the same night the blood was extracted, and the record as reconstructed establishes no such deficiency.

Appellee nevertheless asserts that police conduct prevented him from admitting the test results in evidence, as chain of custody could not be maintained because the sample was not retained in appellee's control. Suffice it to say the record does not affirmatively establish that chain of custody could not be established and we will not so speculate. We further find nothing in the record which would prevent a subpoena of the hospital and police personnel who handled the sample. Further, appellee is not prevented from testifying as to his own handling of the sample should he voluntarily elect to do so. Moreover, it would appear that the State would be estopped from contesting that the conduct of law enforcement officials was not adequate to establish maintenance of a proper chain of custody over the sample during the time when it was under the exclusive custody and control of law enforcement officials. OCGA § 24-4-27. This holding also is consistent with the well-established rule that a party cannot complain of matters caused by his own procedure or conduct. *Littlefield v. State*, 197 Ga. App. 343, 344 (2) (398 SE2d 375); *Tyson v. State*, 184 Ga. App. 309, 310 (1) (361 SE2d 386). (Additionally in the interest of judicial economy, the State might desire to stipulate as to the chain of custody, at least until the sample was placed in appellee's possession upon his release from custody.) In any event, it is not affirmatively established in the current record that, although appellee had no personal control over the sample during the time he was incarcerated, a chain of custody was not maintained properly by the law enforcement authorities until they returned the sample to appellee. Further, the record does not establish the blood sample either was substituted or tampered with while in the possession of the police,

and such bare speculation is insufficient to preclude establishment of chain of custody. *Williams v. State,* 199 Ga. App. 122 (2) (404 SE2d 296).

2. Appellee argues that a key issue is whether, under the existing circumstances, he was *offered* a qualified person of his own choosing to administer the additional test.

OCGA § 40-6-392 (a) (3) provides: "The person tested may have a physician or a qualified technician, chemist, registered nurse, or other qualified person of his own choosing administer a chemical test or tests in addition to any administered at the direction of a law enforcement officer. The justifiable failure or inability to obtain an additional test shall not preclude the admission of evidence relating to the test or tests taken at the direction of a law enforcement officer."

In *State v. Tosar,* 180 Ga. App. 885, 887 (350 SE2d 811), we held: "The State did prove that [the officer] read appellee his rights. The State is under no duty to show appellee's affirmative waiver of an additional chemical test: [Cits.] 'As we read this statute a duty is placed upon an officer who administers or causes to be administered a chemical test for alcoholic content in bodily fluids *to advise* the testee that he is entitled to an independent test of his own choosing. Once that duty is fulfilled by the officer, the statutory obligation is satisfied. Sworn testimony by the officer that such advice was given constitutes a prima facie showing of compliance.' " (Emphasis supplied.) As in *Thompson v. State,* 175 Ga. App. 645, 647 (334 SE2d 312), "[t]he facts show that defendant was *afforded the opportunity* to obtain an independent test of his blood, and that is *all* that is required." (Emphasis supplied.) Although the reconstructed record is sparse, it is adequate to establish that appellee was duly advised of his statutory rights within the meaning of OCGA § 40-6-392 (a) (3) and (4). See generally *Fowler v. State,* 200 Ga. App. 505 (2) (408 SE2d 449); *State v. Tosar,* supra at 887. In this regard, the State is not under a duty to show appellee's affirmative waiver of any or all of his rights. *State v. Tosar,* supra.

In the absence of an affirmative showing in the record of fraud or deceit by the police calculated to thwart an honest exercise of appellee's statutory rights, the mere fact appellee was taken to a facility that would not test his drawn blood does not render the advice given him, regarding his right to independent testing, invalid. Once duly advised of his right to an independent test, as was done in this case, appellee would be free, absent unjustified interference by the police, to elect voluntarily to exercise by words or conduct all or any of his rights under the statute. Thus, he could elect to have a blood sample drawn at one facility and tested elsewhere. The reconstructed record reveals that after appellee's blood was drawn at the facility in question, he made no additional request, reasonable or otherwise, that the

police transport him elsewhere (e.g., to the other medical facility of which he was apprised) to have the blood sample tested. The record does not establish that had appellee requested the police to take him to another facility they would have refused to accommodate such a request. The record, as reconstructed, does establish that appellee elected to be taken to a facility which only would draw but not test the blood sample, and he made no request thereafter to be transported to a place where the sample could be tested.

While "it is the duty of a police officer not to prevent a defendant from exercising his right to an independent test, [it is] not his duty to insure the performance of such test." *Grizzle v. State*, 153 Ga. App. 364 (2) (265 SE2d 324). As established by the admission in judicio contained in appellee's brief, appellee's sample in fact was ultimately tested. The question remains, however, whether, under the attendant circumstances, the police through words or conduct engaged in any acts or omissions which constituted a failure or refusal on their part to allow the appellee to exercise any of the existing statutory rights which he had elected. " 'OCGA § 40-6-392 (a) (3) allows one accused of driving under the influence of alcoholic beverages the right to have a chemical analysis of his blood and urine by a qualified person of his own choosing, and there is a corresponding duty on the part of law enforcement officers *not to refuse or fail to allow the accused to exercise that right.*' " (Emphasis supplied.) *O'Dell v. State*, 200 Ga. App. 655, 656 (409 SE2d 54). As in *State v. Blalock*, 197 Ga. App 71, 72 (397 SE2d 491), there exists in the record before us "no evidence of police action or inaction which prevented accommodating [appellee]," as to the fulfillment of those rights which he freely and knowingly asserted, let alone evidence that unjustified police action precluded appellant from obtaining additional testing.

In view of the posture of the record before us, we need not determine how promptly a sample must be tested after a valid request for such testing is made. However, assuming arguendo the police had thwarted both an existing and an asserted statutory right of appellee to have the sample tested promptly after it was extracted, " '[i]t is incumbent on the trial court to determine whether the failure or inability to obtain the additional test is justified' " (id.), because " 'justifiable failure or inability to obtain an additional test [or tests] shall not preclude the admissibility of evidence relating to the test or tests taken at the direction of a law enforcement officer' " (*State v. Buffington*, 189 Ga. App. 800, 801-802 (377 SE2d 548)). See generally OCGA § 40-6-392 (a) (3); see *Puett v. State*, 147 Ga. App. 300 (248 SE2d 560); compare *Grizzle v. State*, supra, with *State v. Laycock*, 151 Ga. App. 145 (259 SE2d 150). Apparently no such determination was ever reached in this case.

We conclude the trial court erred in granting the appellee's sup-

pression motion.

*Judgment reversed. Beasley and Andrews, JJ., concur.*

DECIDED JUNE 4, 1992.

*Keith C. Martin, Solicitor, Leigh A. Moore, Assistant Solicitor,* for appellant.

*Jerry L. Patrick, Jr.,* for appellee.