## A02A1645. THE STATE v. SCHMIDT.
### (569 SE2d 630)

BLACKBURN, Chief Judge.

Following the grant of Roy Schmidt's motion to suppress the results of his Intoxilyzer 5000 breath test in this DUI prosecution, the State appeals, contending that the trial court improperly found that the State failed to reasonably accommodate Schmidt's request for an independent blood test. For the reasons set forth below, we affirm.

> When an appellate court reviews a trial court's order concerning a motion to suppress evidence, the appellate court should be guided by three principles with regard to the interpretation of the trial court's judgment of the facts. First, when a motion to suppress is heard by the trial judge, that judge sits as the trier of facts. The trial judge hears the evidence, and his findings based upon conflicting evidence are analogous to the verdict of a jury and should not be disturbed by a reviewing court if there is any evidence to support [them]. Second, the trial court's decision with regard to questions of fact and credibility must be accepted unless clearly erroneous. Third, the reviewing court must construe the evidence most favorably to the upholding of the trial court's findings and judgment.

(Punctuation omitted.) *Kittler v. State*.[1]

Viewing the evidence in this light, the record shows that, on February 17, 2001, Officer Mark Essex stopped Schmidt for erratic driving. After noticing a strong odor of alcoholic beverages, Officer Essex asked Schmidt to consent to certain field sobriety tests. Schmidt refused the tests. Officer Essex then arrested Schmidt, read his implied consent rights to him, and requested that he submit to a breath test. At that time, Schmidt refused to consent to a breath test and requested an independent blood test. Officer Essex then reread Schmidt's implied consent rights to him. Schmidt then responded that "he was pretty sure that he had the right to his own test." Officer Essex then repeated the implied consent rights in order to inform Schmidt that he did have the right to have an independent test if he consented to the State's breath test. Schmidt still did not consent to the State's test at that time.

Officer Essex put Schmidt into his patrol car and transported him to the county jail. Once there, Schmidt consented to the State's

---

[1] *Kittler v. State*, 234 Ga. App. 120, 122 (3) (506 SE2d 231) (1998).

breath test. Prior to the test, Schmidt was read his implied consent rights once again. Although the State generally takes two breath samples, Schmidt provided one in order to qualify for the right to a blood test, but refused to provide a second. Following the breath test, Schmidt was charged and jailed. The State made no attempt to allow defendant an independent blood test, and Schmidt did not repeat his request for such test. Schmidt testified that he did not think that he had to do so, and he thought that he had made his desire to have an independent test clear.

As an initial matter, Schmidt's refusal to provide a second breath sample does not preclude him from his right to an independent blood test. OCGA § 40-6-392 (a) (1) (B) provides, in relevant part:

> No more than two sequential series of a total of two adequate breath samples each shall be requested by the state; provided, however, that after an initial test in which the instrument indicates an adequate breath sample was given for analysis, any subsequent refusal to give additional breath samples shall not be construed as a refusal for purposes of suspension of a driver's license under Code Sections 40-5-55 and 40-5-67.1.

Thus, refusal to provide the second breath sample does not constitute a refusal to comply with the State's request to provide a breath sample. Accordingly, because he provided the State with one admissible breath sample, Schmidt retained his right to an independent analysis of his blood.

> OCGA § 40-6-392 (a) (3) allows one accused of driving under the influence of alcoholic beverages the right to have a chemical analysis of his blood and urine by a qualified person of his own choosing, and there is a corresponding duty on the part of law enforcement officers not to refuse or fail to allow the accused to exercise that right. While it is not the officer's duty to insure the performance of an independent test, he cannot prevent a defendant from exercising his right to such a test. The statute also states that the justifiable failure or inability to obtain an additional test shall not preclude the admission of evidence relating to the test or tests taken at the direction of a law enforcement officer. It is incumbent on the trial court to determine whether the failure or inability to obtain the additional test is justified. In making that determination, the trial court must decide if, under the totality of the circumstances, the officer made a

reasonable effort to accommodate the accused who seeks an independent test.

(Citations and punctuation omitted.) *State v. Vandervoort.*[2] The State has the burden of showing it complied with the requirements of OCGA § 40-6-392 (a) (3). *State v. Hughes.*[3]

While the State offered the testimony of Officer Essex to dispute Schmidt's testimony, this created factual issues for resolution by the trial court. The trial court resolved such factual issues adversely to the State's position. In this case, the trial court determined that the State failed to meet its burden. As stated above, conflict in facts and issues of credibility must be determined by the trier of fact. *Kittler,* supra. Although Schmidt requested an independent blood test prior to submitting to the State's breath test, there is no evidence whatsoever that the State attempted to accommodate this request in any way. This case is similar to *Chamberlain v. State.*[4] In that case, we held:

> [A] refusal to give a subsequent sample shall not affect the admissibility of the results of any prior sample. Thus, the fact that [the defendant] failed or refused to provide a second sample, as requested by the State, did not affect the admissibility of the results of the first sample. But the State's test results were rendered inadmissible when [the defendant] was denied the right to an independent test without justification. After providing a breath sample sufficient to cause the breath-testing instrument to produce a printed alcohol concentration analysis on the state-administered breath test, [the defendant] was entitled to the blood test . . . requested. The unjustified failure to provide the test is a violation of the statute and precludes the State from introducing evidence regarding its test.

(Footnote omitted.) Id. at 425.

Here, we can find no error in the trial court's ruling that the State's unjustified failure to facilitate the independent blood test requested by Schmidt precludes the State from introducing evidence of the Intoxilyzer 5000 test.

*Judgment affirmed. Johnson, P. J., and Miller, J., concur.*

---

[2] *State v. Vandervoort*, 215 Ga. App. 72-73 (1) (449 SE2d 617) (1994).

[3] *State v. Hughes*, 181 Ga. App. 464, 467 (352 SE2d 643) (1987).

[4] *Chamberlain v. State*, 246 Ga. App. 423 (541 SE2d 64) (2000).

DECIDED JULY 26, 2002.

*Gerald N. Blaney, Jr., Solicitor-General, Emilien O. Loiselle, Jr., Jeffrey P. Kwiatkowski, Assistant Solicitors-General,* for appellant.

*Spruell, Taylor & Associates, Billy L. Spruell, Melinda D. Taylor,* for appellee.